```
        UNITED STATES DISTRICT COURT
  FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
              WESTERN DIVISION
```

RUDOLPH WALKER                                              PLAINTIFF

VERSUS                                   CIVIL ACTION NO. 5:06cv60-DCB-JMR

THE CITY OF VICKSBURG, MISSISSIPPI;
CHIEF TOMMY MOFFETT; DEPUTY CHIEF
RICHARD O'BANNON; MAYOR LAURENCE
LEYENS; ALDERMAN MICHAEL MAYFIELD;
ALDERMAN SIDNEY BEAUMAN; AND
JOHN DOES 1-10                                              DEFENDANTS

## OPINION AND ORDER

This matter comes before the Court on the defendants' Supplemental Motion for Summary Judgment [**docket entry no. 42**] and Amended Supplemental Motion for Summary Judgment [**docket entry no. 47**]. Having carefully considered the Motions, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

### I. INTRODUCTION

On October 31, 2007, this Court issued its Memorandum Opinion and Order [docket entry no. 40] whereby it granted in part and denied in part the defendants' August 22, 2007 Motion for Summary Judgment [docket entry no. 27][1], and gave the parties leave to file

---

[1] The complete factual background and procedural history of the case, as well as the applicable summary judgment standard was explicated by the Court in its October 31, 2007 Memorandum Opinion and Order and will not be repeated here.

additional motions for summary judgment.

On November 7, 2007, the defendants filed their Supplemental Motion for Summary Judgment [docket entry no. 42], and later amended the same by their Amended Supplemental Motion for Summary Judgment [docket entry no. 47] of November 19, 2007.[2]  On November 17, 2007, the plaintiff responded in opposition to the defendants' motion [docket entry no 44].  The defendants filed a reply in support of their motion on December 6, 2007 [docket entry no. 52]. The defendants' motion is now before the Court.

## II. ANALYSIS

In their motion, the defendants urge that the plaintiff has failed to show that he suffers from a disability as contemplated by the Americans with Disabilities Act of 1990, 104 Stat. 328, 42 U.S.C. §§ 12101-213 (2006)("ADA").  (Am. Suppl. Mot. ¶ 2.)  The defendants also assert that the individual defendants cannot be held liable to the plaintiff under the terms of the ADA and that the plaintiff's state law claims for intentional and reckless infliction of emotion distress fail as a matter of law.  (Am. Suppl. Mot. ¶ 2.)  The Court will discuss these three issues seriatim.

### A. ADA Claim Against the Individual Defendants

---

[2] Except as where otherwise noted, the Court will refer to these two filings as a single motion.

The defendants argue that the individual defendants[3] are entitled to summary judgment because the ADA does not impose individual liability upon employees or supervisors. (Am. Suppl. Mot. 2.) The plaintiff essentially agrees with the defendants' position. (Pl.'s Memo. 2.)

The ADA prohibits discrimination by a "covered entity" against a qualified person with a disability on account of the disability. 42 U.S.C. § 12112(a). A "covered entity means an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). The ADA defines an "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such person . . . ." 42 U.S.C. § 12111(5).

While the United States Court of Appeals for the Fifth Circuit has not squarely addressed the issue[4], several other Courts of Appeals have held that the ADA does not impose liability upon individuals who do not otherwise satisfy the statutory definition of "employer." Sullivan v. River Valley Sch. Dist., 197 F.3d 804, 808 n.1 (6th Cir. 1999); EEOC v. AIC Sec. Investigations, Ltd., 55

---

[3] The individual defendants include Chief Tommy Moffett, Deputy Chief Richard O'Bannon, Mayor Laurence Leyens, Alderman Michael Mayfield, and Alderman Sidney Beauman.

[4] Notably, the Fifth Circuit has clearly held that individuals are not subject to liability under both Title VII, Ackel v. Nat'l Commc'ns, Inc., 339 F.3d 376, 382 n.1 (5th Cir. 2003), and the ADEA, Medina v. Ramsey Steel Co., 238 F.3d 674, 686 (5th Cir. 2001).

F.3d 1276, 1282 (7th Cir. 1995); Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996). These courts have explained that the "any agent of such person" part of the ADA's definition of employer serves to ensure that an employer can be held liable under a respondeat superior theory for the acts of its agents, and that such a phrase does not operate to impose liability upon individual employees.

The Court finds the interpretive reasoning of these courts to be sound and persuasive. Accordingly, because the plaintiff has not shown that any of the individual defendants satisfy the statutory definition of an "employer," they are all entitled to a judgment as a matter of law on the plaintiff's ADA claim.

*B. ADA Claim Against Defendant City of Vicksburg*

The ADA partially defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual[.]" 42 U.S.C. § 12102(2). "Although the ADA does not define 'substantially limits,' it appears to have at least two dimensions: severity and duration." Bayless v. Orkin Exterminating Co., Inc., 67 Fed. Appx. 251, at *4 (5th Cir. May 5, 2003).

As to the severity prong, the defendants devote much effort toward questioning the Court's earlier determination that the bouts of dizziness and blackouts which the plaintiff experienced were of such severity as to substantially limit the plaintiff in the major

4

life activity of thinking.[5]  Moreover, the defendants attempt to characterize the Court's holding that the plaintiff was substantially limited in the major life activity of thinking as synonymous with a holding that the plaintiff was substantially limited in the major life activity of working.  The defendants are incorrect.  Nowhere in its October 31, 2007 Memorandum Opinion and Order did the Court even mention the major life activity of working.  The plaintiff has never asserted that he was substantially limited in the major life activity of working.[6] Therefore, the Court will not address the defendants' argument that Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999), forecloses a holding that the plaintiff's impairment was so severe as to substantially limit him in the major life activity of working.

The defendants also direct the Court to the Supreme Court's holding in Toyota Motor Mfg. Kentucky, Inc. v. Williams, 534 U.S. 184, 198, 122 S. Ct. 681, 691, 151 L. Ed. 2d 615 (2002), that, in addition to being sufficiently severe, an impairment must also have

---

[5] The defendants wholly fail to acknowledge that the Court also held that the same symptoms were severe enough to substantially limit the plaintiff in the major life activity of caring for oneself.  (Memo. Op. & Ord. 20.)

[6] Indeed, on pages 18-23 of his Memorandum in Opposition to the Defendant's Motion for Summary Judgment [docket entry no. 30], the plaintiff specifically argues that his diabetes substantially limited him in the major life activities of eating, thinking, and caring for himself.

a "permanent or long term" impact in order for it to be substantially limiting on a major life activity. Although mentioned in the defendants' memorandum in support of its initial motion for summary judgment, this issue was neither the focus of said writing nor did the Court address it in its October 31, 2007 Memorandum Opinion and Order.

The evidence reveals that the plaintiff was placed on the C-shift in November 2004 and purportedly began experiencing episodes of dizziness, memory lapse/blackouts, and drowsiness while on duty in mid-February 2005. (Walker Depo. 66.) On April 1, 2005, the plaintiff consulted Dr. Joseph Wilson to obtain relief from his symptoms. (Pl.'s 4/1/05 Med. Record.) To treat the plaintiff's condition, Dr. Wilson prescribed a medicine called Glyburide for the plaintiff on the same day. (Pl.'s 4/1/05 Med. Record.) At his deposition, the plaintiff gives conflicting statements[7] as to how quickly the Glyburide took effect and the degree to which it treated his blackouts and dizziness before May 25, 2005, the date on which he was taken off the C-shift and moved to an office position. (Walker Depo. 92-93.)

The plaintiff does not provide evidence that his symptoms were

---

[7] In one sentence, the plaintiff stated that he did not experience blackouts or dizziness at night after he started the Glyburide. In two of his following answers, he said that the Glyburide helped "a little bit" and that he thought he had some blackouts after he started the medication as part of a period of adjustment to it. (Walker Depo. 92-93.)

present at any time from June 2, 2005 through September 15, 2005, the period during which he was on leave without pay.  In addition, the plaintiff stated at his deposition that he could not recall if he experienced blackouts or other problems between September 16, 2005 (the date on which the plaintiff returned to the C-shift) and mid-October 2005 (when he began working the B-shift). (Walker Depo. 97.)  The plaintiff declared that he did not experience any blackouts or other trouble resulting from his diabetes while on the B-shift.  (Walker Depo. 100.)

To summarize, the record shows that the plaintiff experienced dizziness and blackouts for a little over three months – – – from mid-February 2005 until May 25, 2005.  However, because mitigating and corrective measures must be considered when determining whether a person is substantially limited in a major life activity, Sutton, 527 U.S. 471, 482, 119 S. Ct. 2139, 2146, 144 L. Ed. 2d 450, the relevant period of inquiry began on April 1, 2005, when the plaintiff consulted Dr. Wilson and began taking Glyburide in an attempt to alleviate his condition.  Judged from this date, the evidence shows that the impact of the plaintiff's impairment lasted no more than eight weeks.

This case exposes one of the difficulties a Court faces when deciding whether an impairment is of sufficient duration to rise to the level of a disability under the ADA.  As the United States Court of Appeals for the First Circuit has noted:

> [t]he statute says nothing about duration and nothing in the term 'disability' or its definition gives a judge, and still less a jury, much guidance. The problem is primarily a policy choice to which Congress did not speak clearly; and the Supreme Court has done no more than extrapolate, from some estimated numbers of those to be covered, that severe restrictions of very important activities were what Congress had in mind. Until the Supreme Court fine-tunes its interpretation, it will be unclear how lower courts should deal with periods between, say, 6 and 24 months.

Guzman-Rosario v. United Parcel Serv., Inc., 397 F.3d 6, 10 (1st Cir. 2005).

Several Courts of Appeals have held that an impairment whose impact lasted only a few months did not substantially limit a major life activity because it was not of a sufficient duration. Carroll v. Xerox Corp., 294 F.3d 231 (1st Cir. 2001)(three months); Adams v. Citizens Advice Bureau, 187 F.3d 315 (2d Cir. 1999)(three and one-half months); Ogborn v. United Food & Commercial Workers Union, Local No. 881, 305 F.3d 763 (7th Cir. 2002)(two months); McGuire v. Dobbs Int'l Servs., Inc., 2000 WL 1036043 (9th Cir. July 27, 2000)(two months); Huckans v. U.S. Postal Serv., 1999 WL 1079619 (10th Cir. Nov. 30, 1999)(three months).

Citing the Supreme Court's "permanent or long term" requirement from Toyota, the United States Court of Appeals for the Fifth Circuit has held that a plaintiff who claimed to have been substantially limited in a major life activity was not disabled under the ADA because of the short eight and one-half month period

of her impairment's impact.  Anderson v. City of Dallas, 116 Fed. Appx. 19, 28 (5th Cir. 2004).

After having carefully considered these matters in a light most favorable to the plaintiff and having allowed supplemental briefing on all pertinent issues, based upon Anderson and the other foregoing authorities it is clear to this Court that the plaintiff has failed to present a genuine issue of material fact as to whether he was substantially limited in a major life activity by his diabetes mellitus type II.  The less than two month period during which the plaintiff may have actually experienced dizziness and blackouts while taking the Glyburide is simply insufficient as a matter of law to substantially limit him in a major life activity.  Similarly, the plaintiff has failed to produce evidence which would demonstrate that the anticipated duration of his impairment's impact upon him was expected to be "permanent or long term."

Therefore, because the plaintiff has failed to show that his diabetic impairment had (or was likely to have had) a permanent or long-term impact, his ADA claim against the City of Vicksburg fails as a matter of law.  The City of Vicksburg is consequently entitled to summary judgment on this claim.

*C. State Law Emotional Distress Claims*

The Court having dismissed all claims over which it had original jurisdiction, the plaintiff shall show cause why the Court

should not use its discretion under 28 U.S.C. § 1367(c)(3) to decline to exercise supplemental jurisdiction over his state law claims for intentional and reckless infliction of emotional distress.

### III. CONCLUSION AND ORDER

Based upon the foregoing analysis and authorities,

**IT IS HEREBY ORDERED** that the defendants' Supplemental Motion for Summary Judgment [**docket entry no. 42**] and Amended Supplemental Motion for Summary Judgment [**docket entry no. 47**] are both **GRANTED IN PART.**

**IT IS FURTHER ORDERED** that the plaintiff shall show cause to this Court at the pre-trial conference currently scheduled in this matter on Wednesday, January 16, 2008, why it should not use its discretion under 28 U.S.C. § 1367(c)(3) to decline to exercise supplemental jurisdiction over the plaintiff's state law claims for intentional and reckless infliction of emotional distress.  Should the Court decide to exercise supplemental jurisdiction over the plaintiff's state law claims, the defendants shall be prepared to show why they should receive the benefit of the exclusive remedy provision of the Mississippi Workers' Compensation Law, Mississippi Code Annotated § 71-3-9 (Rev. 2000), on the plaintiff's reckless infliction of emotional distress claim, insofar as they have not affirmatively pled or proven entitlement to the same.

**IT IS FURTHER ORDERED** that the Court's October 31, 2007

Memorandum Opinion and Order [**docket entry no. 40**] is **AMENDED AS MODIFIED** by this Opinion and Order.

 **SO ORDERED,** this the 10th day of January 2008.

                _____s/ DAVID BRAMLETTE_____

                **UNITED STATES DISTRICT JUDGE**